Minute Order Form (06/97)

954

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 1588 | **DATE** | 11/27/2002 |
| **CASE TITLE** | Lawrence Fisher vs. Orion Page, et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due ______.

(3) ☐ Answer brief to motion due______. Reply to answer brief due______.

(4) ☐ Ruling/Hearing on ______ set for ______ at ______.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on ______ set for ______ at ______.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on ______ set for ______ at ______.

(7) ☐ Trial[set for/re-set for] on ______ at ______.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to ______ at ______.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated herein, the decision of the bankruptcy court is affirmed. Enter memorandum opinion and order.

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| ✓ | Docketing to mail notices. |
| ✓ | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

number of notices

DEC 03 2002
date docketed

docketing deputy initials

date mailed notice

mailing deputy initials

Document Number: 29

SLB — courtroom deputy's initials

U.S. DISTRICT COURT
CLERK
02 DEC -2 PM 2:56

Date/time received in central Clerk's Office

DOCKETED

DEC 0 3 2002

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LAWRENCE FISHER, Trustee of the Estate of Lake States Commodities, Inc., a/k/a Lake States, Inc. and Trustee of the Estate of Thomas W. Collins,

Plaintiff-Appellant,

v.

ORION PAGE; THOMAS G. GIANOS, SR.; WILLIAM T. BENNISON; SUSAN V. COOK; PETER COOK; SUSAN DUFFLEY; ROOM FOR IMPROVEMENT; PRIME TABLE RESTAURANT & LOUNGE, INC.; KATHLEEN B. CHAMBERS; ERIN CHAMBERS; AMY CHAMBERS; AVALON BANQUETS LIMITED PARTNERSHIP; AVALON BANQUETS, INC.; JOE SIEPKA; JOHN SELLIS; JAMES SPENTZOS; JOHN SELLAS; WILLIAM E. COOK; WILLIAM G. COOK; WILLIAM COOK BUICK; JOHN SHEA; ANN SHEA; MICHAEL COOK; DINANDREA, INC.,

Defendants-Appellees.

Case Nos. 02 C 1588, 02 C 1691, 02 C 1692, 02 C 1693, 02 C 1694, 02 C 1695, 02 C 1696, 02 C 1697, 02 C 1698, 02 C 1699, 02 C 1700, 02 C 1701, 02 C 1702, 02 C 1703, 02 C 1704, 02 C 1705, 02 C 1706, 02 C 1707

Honorable John W. Darrah





## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the appeal of the judgment of the bankruptcy court on January 11, 2002, by Lawrence Fisher, the Trustee of the Estate of Lake States Commodities, Inc., also known as Lakes States, Inc., and the Estate of Thomas W. Collins ("Trustee"). For the reasons that follow, the decision of the bankruptcy court is affirmed.

## BACKGROUND

Lake States was an Illinois corporation whose principal place of business was located in Rolling Meadows, Illinois. Lake States was in the business of soliciting investors for commodity futures trading and participating in commodity pools. Collins was the president and shareholder of Lake States. Collins' brother, Edward Collins, was Lake States' vice-president.

On June 16, 1994, involuntary petitions for relief were filed under Chapter 7 of Title 11 of the United States Code against the Debtors. An interim trustee was appointed on July 14, 1994. The interim trustee retained KPMG Peat Marwick, LLP ("KPMG") to provide accounting services for the estates. Lawrence Fisher ("Trustee") was elected to serve as the Chapter 7 trustee on October 26, 1994. After KPMG disbanded, the Trustee continued to retain the KPMG accountants who were now employed at Ernst & Young.

On June 14, 1996, the Trustee filed a number of adversary proceedings against investors in Lake States and later proceeded to trial, seeking to recover payments made to the defendant investors by Lake States as fraudulent conveyances under 11 U.S.C. § 548(a)(1)(A),(B) and the

Illinois Uniform Fraudulent Transfer Act, 740 Ill. Comp. Stat. 160/1 *et seq.*[1] The central issues at the joint trial were whether Lake States (1) was insolvent and (2) operated as a Ponzi scheme[2] during the time period beginning 1989 and ending 1994.

At the trial, the Trustee and his expert, Kenneth J. Malek, were the sole witnesses. The Trustee attempted to testify regarding Lake States' business operations, specifically the manner in which it solicited and paid its investors. However, the bankruptcy court excluded this testimony under Federal Rule of Evidence 602 because the Trustee lacked personal knowledge of Lake States' business operations.

The Trustee also attempted to introduce the following evidence through documents: (1) a report prepared by Malek ("the Malek Report");(2) an accounting report prepared for the Trustee by KPMG ("the KPMG Report"); (3) a net cash report regarding Lake States ("the Net Cash Report"); (4) a copy of the indictment of Edward Collins and (5) a copy of the docket sheet maintained by the Clerk of the Court of the United States District Court for the Northern District of Illinois in *United States v. Edward Collins*, No. 99 CR 311.

---

[1]Many of the adversary proceedings were settled. The remaining adversary proceedings against the defendants named in this appeal proceeded to a joint trial on May 7, 2001.

[2]"'In a Ponzi scheme, an enterprise makes payments to investors with monies from newly attracted investors, rather than from profits of a legitimate business venture. [I]nvestors are promised large returns on their investments, and initial investors are in fact paid sizeable returns. The fact of those payments helps to attract new investors, giving the impression that a legitimate business opportunity exists, even though there is no underlying business venture. . . . Ultimately[,] the scheme collapses, as more and more investors need to be attracted into the scheme so that the growing number of investors on top can get paid.'" (Conclusions of Law ¶ 48) (quoting *Fisher v. Sellis (In re Lake States Commodities, Inc.)*, 253 B.R. 866, 869 n.2 (Bankr. N.D. Ill. 2000) (citations omitted)).

The Trustee testified concerning KPMG's analysis of Lake States' business records and the KPMG Report. However, the bankruptcy court also excluded this testimony under Rule 602 because the Trustee lacked personal knowledge of these matters as he did not assist in the preparation or maintenance of the business records. The Trustee also testified that he did not issue subpoenas to any former employees of Lake States, who could have laid a foundation for the introduction of the business records.

The Trustee also testified regarding the KPMG Report and the Net Cash Report. Neither the author of the KPMG Report nor any other former employee of KPMG was called to testify regarding the report or the foundation for the alleged business records upon which the report was based. Although the Trustee indicated that he would attempt to lay a foundation for the reports using his expert witness, the Trustee, during his testimony, attempted to lay a foundation. Upon objection by Defendants as to the absence of a proper foundation, the KPMG and Net Cash Reports were not admitted into evidence.

The Malek Report was admitted into evidence without objection. The Bankruptcy Judge held:

> Based on a review of (i) the [b]usiness [r]ecords that were included in the KPMG Report and (ii) the documents relating to the assets recovered by the Trustee in his 'recovery action,' Malek determined that the monies coming into Lake States were used to personally enrich Collins and to continue the Ponzi scheme by funding payouts to earlier investors. This conclusion was based in part on Malek's determination from the Clearing Firm Accounts that Lake States procured approximately $117 million from investors, and of that amount, no more than a maximum of $23 million was invested in the accounts. In addition, Malek determined that, exclusive of the new cash invested, Lake States had no other source of income to repay investors. Therefore, Malek concluded that Lake States used new investors to pay old investors, which is indicative of a Ponzi scheme operation.

(Findings of Fact ¶ 30.) The Malek Report also concluded that the sum of Lake States' debts exceeded its assets during the relevant time period and, therefore, was insolvent.

The Trustee also offered into evidence certified copies of a criminal indictment issued against Edward Collins and the criminal docket sheet, which indicated the entry of judgment against Edward Collins. Defendants objected because they had not had an opportunity to review those documents, as the Trustee had not indicated previously that he intended to introduce them at trial. The Trustee stated he sought to introduce these documents only to prove that Edward Collins was unavailable to lay a foundation for or authenticate the KPMG and Net Cash Reports. The bankruptcy court ruled that "[t]he Trustee dropped his request to admit the Indictment and the Criminal Docket into the record . . . [because] the Trustee did not include a discussion of the Indictment and Criminal Docket in his post-trial brief and completely ignored them in his closing argument." (Findings of Fact ¶ 37.) Therefore, the indictment and criminal docket sheet were not admitted into evidence to establish any facts or to demonstrate Edward Collins' unavailability.

At the close of the Trustee's case, Defendants, except Orion Page, moved for judgment on partial findings pursuant to Federal Rule of Civil Procedure 52(c) made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7052(c). The bankruptcy court denied the motion at that time and directed the parties to prepare proposed findings of fact and conclusions of law.

In a written opinion, including findings of fact and conclusions of law, the bankruptcy court held that the Trustee had not met his burden of proof on the issue of the existence of a

Ponzi scheme. The bankruptcy court found that the only evidence that could prove the Ponzi scheme and support an inference of actual intent and a presumption of insolvency was the Malek Report and Malek's testimony because the Trustee's testimony regarding Lake States' operations, the KPMG Report and the Net Cash Report had been excluded. The bankruptcy court, while holding that Malek qualified as an expert under Federal Rule of Evidence 702, expressly gave no evidentiary weight to Malek's testimony and the Malek Report because there was no other admissible evidence to validate (1) the facts relied upon by Malek or (2) Malek's conclusions regarding the existence of a Ponzi scheme or insolvency. The bankruptcy court also held that it was giving no evidentiary weight to the Malek Report because there was no meaningful testing of the information upon which it was based. Since the Trustee had not met his burden of proof, the bankruptcy court entered judgment in favor of Defendants under Rule 7052(c).

The Trustee then appealed the bankruptcy court's judgment to this Court, raising the following issues for review:

> 1. Whether the trial court erred by excluding from evidence self-authenticating public records in the form of a certified copy of a criminal indictment and a certified copy of a page of a criminal case docket reflecting a conviction;
> 2. whether the trial court erred by entering judgment against the Trustee when the trial court had previously denied defendants' 52(c) motion at the *close of all evidence*;
> 3. whether the trial court erred by giving no weight to the expert's testimony and report that relied upon information customarily relied upon by experts in the field, information from a prior expert, the business records of the Debtors, statements of the Trustee and a compilation of the books and records of the Debtors prepared at the Trustee's direction;
> 4. whether a compilation of the books and records of the Debtors . . . prepared by . . . [KPMG] authorized by the trial court and retained by the Trustee to review

> the books and records of the Debtors should have been admitted into evidence on the issues of Ponzi scheme and insolvency;
> 5. whether the trial court erred by excluding testimony by the Trustee, successor by operation of the Bankruptcy Code to the assets, liabilities and records of the Debtors, about the existing books and records of the Debtors; and
> 6. whether the trial court erred by failing to consider all the evidence that established the Trustee's *prima facie* case on the issues of Ponzi scheme and insolvency.

(Pl.'s Opening Br. at 2-3.)

## LEGAL STANDARD

Issues (1), (5), and (6) set forth above challenge the Bankruptcy Court's decision to admit or exclude evidence during the trial. Evidentiary rulings regarding the admissibility of evidence are reviewed only for an abuse of discretion. *Aetna Life Ins. Co. v. Wise*, 184 F.3d 660, 665 (7th Cir. 1999). "Under [the abuse of discretion] standard, the relevant inquiry is not how this court would have ruled, but instead is 'whether *any* reasonable person could agree with the [bankruptcy] court.'" *Peate v. McCann*, 294 F.3d 879, 884 (7th Cir. 2002) (quoting *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 563 (7th Cir. 1984)).

Issues (2) and (3), seeking review of the propriety of the bankruptcy court's application of Rule 7052(c) to render judgment following the consideration of the parties' proposed findings of fact and conclusions of law, are mixed questions of law and fact. The Court reviews the bankruptcy court's factual determination for clear error and reviews application of the law to the facts *de novo*. *In re Ratner*, 132 B.R. 728, 730 (N.D. Ill. 1991).

> A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . If the bankruptcy court's account of the evidence is plausible, a reviewing court may not reverse even if it would have weighed the evidence differently as trier of fact.

*SK-Palladin Partners, L.P. v. Platinum Entm't, Inc.*, No. 01 C 7202, 2001 WL 1593154, at *3 (N.D. Ill. Dec. 13, 2001).

Issue (4), addressing the weight afforded by the bankruptcy court to the Trustee's expert report, is a factual determination. Factual findings, such as the credibility of witnesses, including experts, are reviewed for clear error only. *G. Heileman Brewing Co. v. Anheuser-Busch, Inc.*, 873 F.2d 985, 995 (7th Cir. 1989) (noting that where statistical evidence is involved, great deference is given to the lower court's determination of whether the evidence is sufficiently probative of the ultimate fact in issue). This standard is expressly set forth in Bankruptcy Rule 8013, which states:

> On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

Fed.R.Bankr.P. 8013.

## DISCUSSION

*1. Exclusion of the Indictment and Criminal Case Docket Sheet*

The Trustee argues that the certified copies of the criminal indictment and docket sheet in *United States of America v. Edward Collins*, No. 99 CR 311, should have been admitted into evidence as a self-authenticating public record. The Trustee further argues that Edward Collins' criminal conviction establishes the Debtors' actual intent to defraud and insolvency and precludes re-litigation of the issue of intent to defraud and insolvency.

The bankruptcy court did not abuse its discretion in excluding the criminal indictment and the criminal docket sheet from evidence. At the time of the trial, contrary to his theory on appeal to this Court, the Trustee stated that he was offering the indictment and docket page for the limited purpose of demonstrating that Edward Collins was unavailable to testify to foundation for the documents sought to be admitted and not for any other purpose. The bankruptcy court specifically found that the Trustee had dropped his request to admit those documents into evidence because he did not include a discussion of those documents in his post-trial brief and completely ignored them in his closing argument. The Trustee no longer sought the admission of the indictment and docket sheet into evidence (even for the purported limited purpose offered at trial); and, therefore, the bankruptcy court did not abuse its discretion in excluding those documents. *Peate*, 294 F.3d at 884.

The Trustee's arguments regarding the admission of the indictment and docket sheet to show intent were presented for the first time to this Court and were not raised before the bankruptcy court; therefore, this issue is not properly before this Court and is deemed waived. *In re Bero*, 110 F.3d 462, 466 (7th Cir. 1997).

*2. The Entry of Judgment against Plaintiff and Rule 7052(c)*

The Trustee argues that the bankruptcy judge erred by entering judgment in favor of Defendants pursuant to Rule 7052(c) after the parties submitted briefs and proposed findings of fact and conclusions of law. The Defendants made a motion pursuant to Rule 7052(c) at the conclusion of the Trustee's case. According to the Trustee, the trial court judge denied the motion;

therefore, the Trustee asserts that court could not later grant judgment in favor of Defendants based on the rule. The Trustee does not cite any legal authority for this position.

The rule does not prohibit the procedure used by the bankruptcy judge in this case. Rule 7052(c) (which incorporated Federal Rule of Civil Procedure 52(c)) provides, in pertinent part, that:

> If during a trial without a jury a party has been fully heard on an issue and the court finds against that party on that issue, the court may enter judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue, or the court may decline to render any judgment until the close of all the evidence.

Fed.R.Bankr.P. 7052(c).

In addition, the Trustee's contention that the judge conclusively and finally denied the Defendants' motion pursuant to Rule 7052(c) at the conclusion of the Trustee's proofs is not supported by the record. Following argument on the motion, the bankruptcy court stated, "I'm going to deny the motion for a judgment at the close of the plaintiff's case *at this time. I believe we will get into briefing these issues at the conclusion of the hearing.*" (Tr. at 106) (emphasis added). Later, the bankruptcy court invited and requested the parties to submit proposed findings of fact and conclusions of law and stated, "I'm going to take the matter under advisement and rule by mail." (Tr. at 107-109.) Clearly, the bankruptcy court indicated it was declining to render final judgment when the motion was made at trial but intended to wait to consider the evidence after the issues were fully briefed as the rule allows. Therefore, the bankruptcy court did not err in entering judgment against the Trustee after denying Defendants' Rule 7052(c) motion at the close of all the evidence.

*3. The Malek Testimony and the Malek Report*

Malek testified that he did not consult with any former Lake States' employees and only spoke with one Lake States' investor on an unrelated matter. He testified that he spoke only with his assistant, the Trustee, Trustee's counsel and the author of the KPMG Report in preparing his report. He also testified that: (1) he did not know who prepared Lake States' business records on which he relied in formulating his opinion, (2) he spent about twenty to thirty hours reviewing those records and the KPMG Report and preparing the Malek Report, (3) he did not provide any analysis relating to insolvency or the Ponzi scheme for the period beginning 1984 and ending 1989, and (4) one of his employees tested one to two percent of the 11,589 transactions listed in the KPMG Report.

As noted above, the bankruptcy court did not accord any evidentiary weight to Malek's testimony or the Malek Report because there were no facts in evidence that supported Malek's conclusion that Lakes States was a Ponzi scheme and, therefore, insolvent. The bankruptcy court reasoned that "[w]hen there is a dearth of other fact evidence in the record, some courts give the expert testimony or report little or no evidentiary weight". (Conclusions of Law ¶ 63) (relying on *In re CSI Enterprises, Inc.*, 220 B.R. 687 (Bankr. D. Colo. 1998), *aff'd*, 203 F.3d 834 (10th Cir. 2000)). In *In re CSI Enterprises*, the court disregarded the expert's testimony because "[t]here is no reason whatsoever for the Court to accept [the expert's] evaluation as to the amount of the debt. Clearly, it is not an opinion formulated by him after an audit or any search for the truth of the actual amount of the indebtedness. An expert's testimony cannot be used to subvert the rules of evidence." 220 B.R. at 696.

Here, the bankruptcy court was the factfinder; and it had the benefit of hearing Malek's testimony, including the cross-examination, in making a determination as to the weight, if any, to be given Malek's testimony and the Malek Report. The bankruptcy court's decision to give no weight to Malek's testimony and report is not clearly erroneous in light of the fact that there was no other evidence supporting Malek's determination that Lake States was operated as a Ponzi scheme and was insolvent, and, particularly in considering that Malek, admittedly, did not subject the underlying data to what the bankruptcy court considered meaningful testing. Moreover, the fact that an expert witness may rely on hearsay documents (as will be discussed below) in formulating an opinion does not render those hearsay documents admissible. Therefore, the bankruptcy court's decision not to accord any evidentiary weight to Malek's testimony and the Malek report was not error.

*4. The Exclusion of a Compilation of the Debtors' Books and Records*
*5. The Exclusion of the Trustee's Testimony Regarding the Debtors' Books and Records*

The Trustee argues that the bankruptcy court erred by excluding the Trustee's testimony about the KPMG Report, Lake States' business records, and the Net Cash Report, as well as the reports and records, because he is the Debtors' successor by operation of law.

The bankruptcy court excluded the KPMG Report, Lake States' business records, and Net Cash Report because a foundation had not been laid for their introduction. The Trustee attempted to lay a foundation with his own testimony; but this did not satisfy the bankruptcy court because: (1) the Trustee did not have personal knowledge of Lake States' business records or the KPMG Report or the Net Cash Report and did not assist with their preparation or maintenance, (2) the Trustee did not subpoena any former Lake States employees who may have

had personal knowledge of those documents or who could have laid a foundation for their introduction, and (3) the Trustee did not call the author of the KPMG Report or any former employee of KPMG to testify about the KPMG Report or the review of the business records.

Federal Rule of Evidence 602 provides that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony." The Trustee admitted that he lacked personal knowledge of and did not assist in the preparation or maintenance of Lake States' business records, the KPMG Report and the Net Cash Report. Pursuant to Rule 602, the Trustee was not, therefore, competent to testify regarding these matters and could not lay a foundation for their admission. The fact that the Trustee is the statutory successor to the assets, liabilities and records of the Debtors does not provide the Trustee with the Debtors' personal knowledge of Lake States' business operations or records, and the Trustee has not provided any case law that would support this assertion.

The Trustee also argues that the business records of the Debtors and the KPMG Report are admissible pursuant to Federal Rule of Evidence 703. In the Malek Report, Malek opined that the KPMG Report was accurate for the insolvency analysis. Malek testified that the business records and the KPMG Report were the type of information relied upon by experts in his field. Federal Rule of Evidence 703 provides in part that "[i]f of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be

admitted." Malek's testimony regarding the accuracy of the reports and the fact that experts in his field regularly rely upon such reports only go to the issue of whether Malek's opinion is admissible under Rule 703 not whether the underlying reports and data are admissible. This theory was expressly and correctly rejected by the trial court judge.

> Again, while it is appropriate for an expert to testify and formulate his opinion based on hearsay evidence, in this case the Court is being asked to accept [the expert's] hearsay testimony and his value judgment as evidence of the ultimate fact and in lieu of any proof of the actual indebtedness owed by [the debtor] to [the creditor]. On the other hand, [the expert] has testified that he relied on [the financial statement] because he believed that it was probably accurate. There is no reason whatsoever for the Court to accept [the expert's] evaluation as to the amount of the debt. Clearly, it is not an opinion formed by him after an audit or any search for the truth of the actual amount of the indebtedness. An expert's testimony cannot be used to subvert rules of evidence.

(Conclusions of Law ¶ 63) (quoting *In re CSI Enters., Inc.*, 220 B.R. 687, 696 (Bankr. D. Colo. 1998) *aff'd*, 203 F.3d 834 (10th Cir. 2000) (additional citations omitted)).

*6. The Trustee Has Established a Prima Facie Case*

Plaintiff argues that, because the trial court admitted Malek's testimony and report, it has established a *prima facie* case of insolvency and a Ponzi scheme. As set out above, the trial court's decision to disregard the testimony of the expert and the limited purpose for considering the otherwise hearsay documents upon which Malek opined was not error by the trial court judge.

Based on the foregoing, it is clear that the bankruptcy court did not abuse its discretion in its evidentiary rulings and that its factual findings were not clearly erroneous. Therefore, the decision of the bankruptcy court is affirmed.

## CONCLUSION

For the reasons stated herein, the decision of the bankruptcy court is affirmed.

**IT IS SO ORDERED.**

John W. Darrah, Judge
United States District Court

Date: November 27, 2002